UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

) Craig Cunningham
) Plaintiff, Pro-se
)
) v.                                        CIVIL ACTION NO.
) Jason L. Burns
)                                                3-12CV1824-L
) Defendants

**Plaintiff's Original Complaint**

1. The Plaintiff in this case is Craig Cunningham, with a mailing address of PO box 90801 Nashville, Tn 37209.

2. Upon information and belief, Defendant Jason Burns is currently an investigator with the Van Zandt County Sherriff's office, but at the times relevant to the complaint, he was employed as a police officer by the Mabank, Tx police department.

**Jurisdiction**

3. Jurisdiction of this court arises under 28 USC 1331 pursuant to 42 USC 1983 and 42 USC 1988 and the Fourth, Fifth, and Fourteenth amendments to the United States Constitution and under common law of the State of Texas. Jurisdiction is based upon 28 USC 1331 and 1343.

4. Venue in this District is proper in that the defendants are employed here, and the acts and transactions occurred here.

**FACTUAL ALLEGATIONS**

5. In August, 2010 at approximately 1 AM, the Plaintiff was driving a vehicle through Mabank, Tx when he observed a vehicle begin to follow his vehicle.

1

6. The road was deserted and devoid of all people, vehicles, or any signs of life, and the Plaintiff was concerned that he was being followed on a desolate highway in the middle of the night by persons with unknown intentions. The Plaintiff owns a radar detector, which serves well as an early warning system for police in the area. The Plaintiff's radar detector was going off indicating that a police officer was in the area and as the only other car on the road, the Plaintiff then believed that he was likely being followed by a police officer.

7. Knowing that he was likely being followed by a police officer who was probably racially profiling the Plaintiff and was looking for any possible traffic infraction to give the pretext to pull over the Plaintiff to look for drugs, the Plaintiff drove especially carefully, below the speed limit, was sure to signal and otherwise obeyed all traffic laws.

8. The Plaintiff shortly thereafter pulled into an empty gas station parking lot, and as the Plaintiff was on the exit ramp, the Plaintiff observed the vehicle following his vehicle very closely to the point that the Plaintiff was concerned about an accident as the Defendant's vehicle was only inches away from his, and the state of mind of the individual who was behind him.

9. The defendant's vehicle did not follow the plaintiff into the parking lot however, and quickly sped away passing a hedgerow of trees and beyond the line of sight of the Plaintiff. The Plaintiff stopped to observe and see if the Defendant had turned around quickly and was waiting to follow the plaintiff, but saw nothing in just a few seconds after being passed. The defendant's vehicle was gone out of sight before the Plaintiff could even circle the parking lot, and the Plaintiff exited from the side of the gas station and got back on the highway assuming that the Defendant was merely going in the same direction as the Plaintiff and was not following the Plaintiff. The Plaintiff notes that the building and trees would have blocked line of sight of the Plaintiff's vehicle.

10. A short time later, perhaps 4-5 minutes, the Plaintiff again observed a vehicle begin to follow the Plaintiff from behind and the Plaintiff's radar detector began to alert again. Now the Plaintiff was concerned, as this individual was clearly following the Plaintiff and was playing cat/mouse. Driving extremely carefully as

before, the Plaintiff continued to drive down the road until he was pulled over by the Defendant. The Defendant turned on his emergency lights and siren signaling the Plaintiff to stop, which the Plaintiff did.

11. The Plaintiff was not doing anything suspicious, illegal, or improper. There were no reports of the Plaintiff being involved in crime or doing anything illegal. The Plaintiff was not cited for anything, nor was the Plaintiff suspected of any criminal activity by any of the Defendants.

12. The Defendant officer immediately asked the Plaintiff for his driver's license and the Plaintiff asked why he was pulled over. Defendant Jason looked as if someone just walked over his grave hesitated and finally stammered that the Plaintiff was driving without his lights on. The Plaintiff then pointed to his lights at the front of his vehicle that were on at the time and had been on the entire time and asked the defendant if he could not see that the Plaintiff's lights were presently on.

13. Defendant Jason conceded that the Plaintiff's lights were indeed on and he could see that they were on, but then reversed course and stated that it was "before" when the Plaintiff's lights were not on, referring to the when the Plaintiff pulled into the parking lot.

14. This is nonsensical, however, because if the Plaintiff had his lights off, a legitimate traffic infraction, pulled off the road into a well-lit parking lot, and parked his vehicle, any reasonable police officer would have stopped and initiated a traffic stop.

15. Defendant Burns did not do so.

16. Additionally, Defendant Burns could not have referred to when the Plaintiff pulled out, because Defendant Burns vehicle was beyond the line of sight of the Plaintiff and was nowhere to be seen as the Plaintiff checked before pulling out. There was no possible way to see the front of the Plaintiff's vehicle or the Plaintiff's vehicle at all as Defendant Burns was driving in the opposite direction and the Plaintiff had pulled out before Defendant Burns had time to turn around.

17. Defendant Burns in his statement to the police chief regarding the encounter even stated that after passing the Plaintiff's vehicle when it pulled into the parking lot and before he could turn around that the Plaintiff's vehicle "disappeared."

18. In short, Defendant Burns was lying through his teeth as to the reasons why he pulled the Plaintiff over, and the Plaintiff knew as much. Defendant Burns had no legitimate reason to pull the Plaintiff over, and was initiating an illegal traffic stop to conduct a fishing expedition with the Plaintiff. Lacking any sort of probable cause, Defendant Burns was content to just make it up in violation of the US constitution and in violation of the Plaintiff's rights. Defendant Burns violated the Plaintiff's right to be free of unreasonable searches and seizures under the 4th Amendment for stopping the Plaintiff without any legal justification.

19. The Plaintiff is well aware of these illegal tactics by police officers, particularly when targeting young black males for pretext stops. The routine goes as follows: the police officer typically follows a target vehicle that they want to stop. If the vehicle makes any sort of minor traffic violation, then the officer has cause to stop the vehicle, at which point he can launch into an array of questions in an attempt to get the driver to say something inconsistent or to do a warrant/vehicle check on the vehicle. Sometimes the officers will find a stolen vehicle or a warrant or the driver will say something stupid to incriminate themselves.

20. If the driver doesn't violate any traffic laws, then many police officers will simply lie and make something up as Defendant Burns did in this example. One common thing they will say is that the vehicle in question swerved or crossed the white lines, was blocking traffic, seatbelt violations, or in this case was driving without their headlights. With no witnesses, and without activating their lights/siren, which will activate their dashboard recording camera, the officers are free to lie about the premise for the stop. The 5th Circuit has shown concern about this practice as it likely violates the 5th and 4th Amendments.

21. The Plaintiff is well aware of this tactic and has had plenty of times to personally observe it being a young black male who has driven through East Texas on more than one occasion. This is a known hotbed of racist activity, and Jason Burns is a perfect example of a racist police officer.

22. What Defendant Burns didn't know is that the Plaintiff has a radar detector, which provides early warning when a police officer is in the area, and knowing this, the Plaintiff clearly wouldn't commit any traffic violations knowing that the vehicle

following him just to try to find any sort of reason to pull him over as Defendant Burns did.

23. Knowing that the Plaintiff was being followed by a cop trying to conduct a pretext stop, the Plaintiff drove as he would with Mrs. Daisy in the back and was particularly careful to not swerve, speed, or violate any traffic laws when he knows that he is being followed by a police officer who is trying to find a legitimate reason to stop him. I would not give him any reason to stop me, and lacking any Defendant Burns decided to just make something up. Defendant Burns didn't know that the Plaintiff knew that the Plaintiff was aware of his illegal tactics and the fact that he was being followed, which is why Defendant Burns elected to try to make up a lie to legitimize the stop.

24. Defendant Burns then asked the Plaintiff if the address on his license was correct. Again, this is another pretext stop tactic to try to develop some sort of reasonable suspicion or probable cause or something to justify the stop. Some police officers believe that the ends justify the means, and if they can find a reason to cite or arrest someone despite an illegal stop, that it justifies the illegal stop. The Plaintiff has seen this before and is well aware of this. The Plaintiff objected to any questioning, demanded a lawyer, and refused consent to any searches.

25. Defendant Burns again looked shocked and stammered that he was only conducting an investigatory traffic stop and didn't see what the problem was. He seemed surprised that the Plaintiff knew and was exercising his constitutional rights.

26. Defendant Burns then stated that he wasn't questioning me as far as any crimes that had been committed. I asked him what he was investigating and he stated that he was investigating wheat was going on, where I was coming from and where I was going. At this point, again the extended questioning on matters unrelated to the purpose of the stop that would not confirm or dispel any suspicions of a crime is improper and violates the Plaintiff's 4th and 5th amendment rights.

27. Defendant Burns admits that he is not investigating any criminal matter, but this is a requirement for a Terry stop, which is what traffic stops are considered under the law. Where the plaintiff is going/coming from is none of the Defendant's

business and citizens can't be stopped simply to satisfy a police officer's general curiosity. Traffic stops conducted to ascertain where someone is going are plainly illegal, as there is no probable cause to detain someone. There must be a probable cause to support the stop and any extended questioning. Defendant Burns had none.

28. Defendant Burns then left to run his computer check on the Plaintiff's vehicle and returned to try to question the Plaintiff about his address after the Plaintiff objected to any questioning and demanded a lawyer.

29. At this point, Defendant Burns had determined that the Plaintiff's vehicle was not stolen and that the Plaintiff was not a fugitive, and yet the questions and extended detention continued.

30. The Plaintiff again objected and demanded a lawyer right then and there on the spot.

31. Defendant Burns repeated his claim that he wasn't investigating a crime and that this was an "investigational traffic stop." Defendant Burns then retaliated against the Plaintiff and threatened to detain the plaintiff illegally further if the Plaintiff didn't waive his 5th amendment right to remain silent and be "cooperative"

32. Defendant Burns then asked where the Plaintiff was heading.

33. Defendant Burns then again claimed that it was suspicious that I pulled into a gas station turned my lights off, and the left without turning my lights on. I denied doing so and pointed out that I knew he was following me and that when he passed by the gas station he couldn't have seen the front of my vehicle or if my lights were on or off.

34. Then Defendant Burns stated that the Plaintiff was driving 45 in a 65 MPH zone, which is another lie. The only time the Plaintiff was driving anywhere close to that slow was when I was exiting the freeway in accordance with the posted signs.

35. The Plaintiff asked if he was pulled over for NOT speeding, to which Defendant burns alleged that the Plaintiff was driving at an unsafe speed, which was below the speed limit on a deserted highway with no other traffic in either direction.

36. The Plaintiff's speed was reasonable at the time, was not impeding traffic, as there was none, and was below the posted speed limit.

6

37. Interestingly enough, in Defendant Burns report on the incident, he made up another lie about the Plaintiff allegedly crossing the median white line. Defendant Burns omitted any reference to the Plaintiff driving without his headlights on. Defendant Burns

38. During the incident, Defendant Burns was clinging to the claim that the Plaintiff was driving without his headlights on and that was the sole reason the Plaintiff was pulled over. Defendant Burns made no mention of this alleged swerving or crossing of the median line.

39. Of course, neither one of these statements was true. Defendant Burns just can't keep his story straight as to why he pulled the Plaintiff over.

40. Defendant Burns at this point gave up on the ruse, handed me back my license and stated that I was free to go. As typical, the Plaintiff was not cited for any misconduct or traffic violations.

41. The Plaintiff subsequently filed an official complaint against Defendant Burns with the chief of police at Mabank. As usual, the blue wall of silence defended one of their own and found that nothing improper was done, but interestingly enough, even the chief of police didn't believe the lies of Defendant Burns.

42. Police Chief Kyle Mcafee stated that after his investigation into the Plaintiff's complaint that he concluded that the real reason I was pulled over was for blocking traffic, and not for driving without my headlights. Even the police chief who is as biased as anyone to find in favor for and cover up for his corrupt subordinate didn't believe the whopper about my headlights being off. This is again more evidence that the Plaintiff's stop was improper and without merit and the Defendant officer lacks any credibility in his statements.

43. In the video the Plaintiff obtained, of the traffic stop, one can clearly observe that the Plaintiff's headlights are on and functioning properly. Additionally, and in direct contradiction of the lying police chief's claim, there are no cars that the Plaintiff was blocking at any time, nor is there any car that passes the Plaintiff's vehicle in any direction for the entire duration of the stop.

44. Defendant Burns actions violated the Plaintiff's 4th amendment rights to be free of unreasonable searches and seizures. The Plaintiff was illegally detained by

7

Defendant Burns and this detention was improperly extended constituting a second violation of the Plaintiff's rights.

45. Defendant Burns violated the Plaintiff's Miranda rights under the 5th, and 14th amendments and continued questioning the Plaintiff after the Plaintiff elected to remain silent.

46. Defend Burns detained the Plaintiff without due process violating the Plaintiff's rights.

47. Defendant Burns violated the Plaintiff's right to have an attorney present during questioning.

48. Defendant Burns violated the Plaintiff's right to remain silent.

49. Defendant Burns retaliated against the Plaintiff by extending the illegal detention because the Plaintiff's exercised his constitutional rights.

50. The Plaintiff suffered actual damages of stress, anger, frustration, humiliation, and embarrassment.

### 51. CAUSES OF ACTION:

### COUNT I
### (42 USC 1983)
### Violations of the 4th, and 14th amendments to the US Constitution

52. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

53. The foregoing acts, errors, and omissions of Defendants Burns constitute multiple violations of the Plaintiff's rights under the 4th, 5th and 14th amendments to the constitution.

54. As a result of each and every one of the Defendants' willful or knowing violations of the Plaintiff's rights under the US Constitution and amendments, Plaintiff

Cunningham suffered actual damages and have deprived the Plaintiff of his rights under the US Constitution and amendments to it.

## COUNT II
### (Civil Tort)
### False Imprisonment

55. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

56. The foregoing acts, errors, and omissions of Defendants Burns constitutes multiple violations of the Plaintiff's rights under the 4th, 5th and 14th amendments to the constitution.

57. As a result of each and every one of the Defendants' willful or knowing violations of the Plaintiff's rights under the US Constitution and amendments, Plaintiff Cunningham suffered actual damages and have deprived the Plaintiff of his rights under the US Constitution and amendments to it.

## COUNT III
### (Civil Tort)
### Intentional Infliction of Emotional Distress

58. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

59. The foregoing acts, errors, and omissions of Defendants Burns constitutes multiple violations of the Plaintiff's rights under the 4th, 5th and 14th amendments to the constitution.

60. As a result of each and every one of the Defendants' willful or knowing violations of the Plaintiff's rights under the US Constitution and amendments, Plaintiff Cunningham suffered actual damages and have deprived the Plaintiff of his rights under the US Constitution and amendments to it.

### PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants Burns for the following:

B. Declaratory judgment that each and every defendant violated the Plaintiff's rights under the United States Constitution; and

C. Actual damages in the amount of $50,000 and

D. An injunction requiring additional training for all the officers involved to prevent such illegal actions as described above including at a minimum attendance at a accredited college level constitutional law course, and

E. Punitive damages for all claims in the amount of $100,000.

F. Pre-judgment interests and Attorney's fees, pursuant to 42 USC 1988 for bringing this action; and

G. Costs of bringing this action; and

H. Any further relief as the Court may deem just and proper.

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

/s/ Craig Cunningham

Plaintiff, Pro-se

Mailing address:

Craig Cunningham

PO Box 90801

Nashville, TN 37209

828-291-7465
June 6th 2012

JS 44 (Rev. 09/11) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Craig Cunningham

**DEFENDANTS**
Jason Burns

RECEIVED JUN 1 2 2012
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
NA

Attorneys *(If Known)*
unknown

3:12CV1824-L

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | | **LABOR** / **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | / ☐ 555 Prison Condition | | | |
| | ☐ 448 Education / ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983
Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 50,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 06/06/2012
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE

Flat Rate Mailing Envelope

For Domestic and International Use

Visit us at usps.com

3-12-CV1824-L

From/Expéditeur:
Craig Cunningham
PO Box 90510
Nashville, TN 37209

To/Destinataire:
US District Court
Attn: clerk
1100 Commerce St Rm 1452
Dallas, TX 75242

RECEIVED JUN 12 2012
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JUN -6 2012
PLEASE PRESS FIRMLY
USPS 3126

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; Oct. 2008; All rights reserved.