IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-1824-L |
| | § | |
| JASON L. BURNS and KYLE MCAFEE, | § | |
| Defendants. | § | Referred for Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the *Standing Order of Reference* dated January 9, 2013 (doc. 24), this case has been referred for pretrial management, including the determination of non-dispositive motions and findings of fact and recommendations on dispositive motions.  Before the Court is *Defendants Jason L. Burns and Kyle McAfee's Motion for Summary Judgment* (doc. 44), filed October 24, 2013. Based on the relevant filings and applicable law, Defendants' motion for summary judgment should be **GRANTED**.

## I.  BACKGROUND

On July 12, 2012, Craig Cunningham (Plaintiff) filed this *pro se* action under 42 U.S.C. § 1983 against Jason Burns (Officer Burns), a former police officer in Mabank, Texas.  (Doc. 3.)  He claims that Officer Burns violated his Fourth, Fifth, and Fourteenth Amendment rights, falsely imprisoned him, and intentionally inflicted emotional distress.  (Doc. 3 at 8-10.)[1]  Plaintiff amended his complaint on July 27, 2013, to add claims against current Mabank Police Chief Kyle McAfee (Chief McAfee) for failing to train, supervise, and discipline Officer Burns with deliberate indifference.  (Doc. 7 at 8-9, 11-12.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

At around 1:30 a.m. September 20, 2010, Plaintiff observed that a police car was following him as he was driving through Mabank. (Docs. 45-4 at 2; 51 at 18.) He obeyed traffic laws and drove below the speed limit. (*Id.*). Plaintiff then took an exit ramp and pulled into a gas station. (Docs. 45-4 at 2; 51 at 19.) He looked around from his parked vehicle to check on the police car, but it was already gone. (Doc. 51 at 19-20.) Plaintiff then left the gas station and proceeded back to the highway. (Doc. 51 at 20.)

Soon after, Plaintiff observed a vehicle following him again, and his radar detector alerted him that it was a police car. (*Id.*) Again, he drove below the speed limit. (Doc. 51 at 21.) He was pulled over. (Docs. 45-4 at 3; 51 at 21.) When the officer, Officer Burns, asked for his driver's license, Plaintiff asked why he had been pulled over. (Docs. 45-4 at 4; 51 at 11, traffic stop at 00'50", 51 at 21.) Officer Burns informed Plaintiff that he had turned his headlights off when he pulled out of the gas station. (Doc. 51 at 11, traffic stop at 01'04"; 51 at 21.) When Officer Burns asked about his address and his itinerary, Plaintiff objected to any questioning and asked for an attorney. (Docs. 45-4 at 4; 51 at 11, traffic stop at 01'24"; 51 at 22.) Officer Burns then informed Plaintiff that he was not conducting a criminal investigation, but a *Terry* stop, in which he could ask questions. (Doc. 51 at 11, traffic stop at 01'50"; 51 at 22-23.) Officer Burns left to check his computer, (*id.* at 11, traffic stop at 2'25"-5'28"), and when he returned, he asked about Plaintiff's address again; Plaintiff refused to answer any questions and demanded an attorney. (*Id.* at 5'45"; doc. 51 at 23.) Officer Burns then stated that if Plaintiff did not cooperate, they "are going to be out here for a while." (Doc. 51 at 11, traffic stop at 6'00"; 51 at 23.) He told Plaintiff that his behavior at the gas station, i.e., turning off his headlights when he entered and left the gas station, was suspicious. (Doc. 51 at 11, traffic stop at 6'20"; 51 at 23.) Plaintiff denied that he had turned the headlights off and noted that Officer Burns could not have seen whether the headlights were off.

2

(Doc. 51 at 11, traffic stop at 6'30"; 51 at 23.)  Officer Burns then stated that Plaintiff was driving

45 mph in a 65 mph zone.  (Doc. 51 at 11, traffic stop at 6'39"; 51 at 23.)  Officer Burns let Plaintiff

go without issuing any citation.  (Doc. 51 at 11, traffic stop at 6'50"; 51 at 24.)

      According to Officer Burns' sworn affidavit, he was on patrol duty in Mabank around 1:30

a.m. on the morning of September 20, 2010.  (Doc. 45-4 at 2.)  Officer Burns first noticed Plaintiff's

vehicle due to its slow speed, a possible indication of an intoxicated driver.  (*Id.*)  He followed the

vehicle for over 100 yards when it pulled into an all-night gas station.  (*Id.*)  The gas station was

located at the intersection of two highways in a remote, undeveloped area, and was considered "a

prime target for nighttime robberies and other criminal activity."  (*Id.*)  He saw that the vehicle

turned off its lights as it entered the parking lot and then parked on the dimly-lit north side of the

convenience store, away from the empty front entrance parking spaces.  (*Id.*)

      Officer Burns drove past the gas station but continued to observe the intersection in his

rearview mirror until he made a u-turn a block away.  (*Id.* at 3.)  Once he made the u-turn, he was

facing the intersection directly.  (*Id.*)  Officer Burns never observed a vehicle drive through the

intersection.  (*Id.*)  When he arrived back at the intersection, he saw taillights of a vehicle moving

away.  (*Id.*)  No other vehicle was around the area, and anyone driving from the gas station in that

direction would have crossed the intersection.  (*Id.*)  Officer Burns caught up with the vehicle, saw

that it had crossed a lane marker, and initiated a traffic stop.  (*Id.*)  Because of the "lack of ambient

lighting and the nighttime conditions," Officer Burns was unable to observe any features of the

driver, including his race, until after he initiated the traffic stop.  (*Id.* at 4.)  When he approached

Plaintiff, he "was uncooperative, verbally belligerent and refused to answer even the most basic

questions", and he demanded an attorney.  (*Id.*)  Officer Burns checked Plaintiff's record and found

no warrants or criminal history.  (*Id.*)  He released Plaintiff without a citation.  (*Id.*)  The traffic stop

3

lasted about seven minutes.  (*Id.*)

Plaintiff subsequently filed an official complaint against Officer Burns with Chief McAfee. (Doc. 7 at 8.)  After an investigation into the matter, Chief McAfee wrote a letter to Plaintiff stating that "Officer Burns' [sic] did not violate policy or law" when he pulled Plaintiff over for the traffic stop because Plaintiff was traveling in slow speed "on a busy highway."  (Doc. 51 at 12.)  Chief McAfee also noted that Plaintiff was not cited for any traffic infractions.  (*Id.*)

Officer Burns and Chief McAfee (collectively Defendants) move for summary judgment on Plaintiff's claims, asserting the defense of qualified immunity.  (*See* docs. 44, 46).

## II.  OBJECTIONS

Defendants object to Plaintiff's evidence, including: (1) Officer Burns's statement to Chief McAfee about the traffic stop, (docs. 51 at 7; 52 at 1); (2) Officer Burns's reports on two unrelated traffic stops, (docs. 51 at 8-10; 52 at 1-2); (3) a CD that contains a recording of the traffic stop and two other recordings made by Plaintiff, (docs. 51 at 11; 52 at 2); (4) Chief McAfee's letter to Plaintiff, (docs. 51 at 12; 52 at 2); (5) written warnings to Officer Burns, (docs. 51 at 16; 52 at 2); (6) the department policy on traffic stop, (docs. 51 at 13-15; 52 at 2); and (7) Plaintiff's affidavit, (docs. 51 at 17-24; 52 at 2-4).

### 1.    *Officer Burns's Statement to Chief McAfee*

Defendants object to Officer Burns's statement to Chief McAfee about the traffic stop because it is unauthenticated and hearsay.  (Docs. 51 at 7; doc. 52 at 1.)

"Authentication is a condition precedent to admission of evidence that is satisfied when a party presents evidence sufficient to support a finding that the matter in question is what its proponent claims."  *United States v. Chaney*, 299 F. App'x 447, 451 (5th Cir. 2008) (quoting Fed. R. Evid. 901) (internal quotation marks omitted).  Here, Officer Burns's statement is sufficiently

authenticated because it is on letterhead from the Mabank Police Department, and Officer Burns's signature on the letter is identical to his signature on his affidavit.  (*Id.*); *F.T.C. v. Hughes*, 710 F.Supp. 1520, 1523 (N.D. Tex. 1989) ("Both the financial statement and letter are on defendant's letterhead.  Moreover, the signature on the letter is identical to the defendant's signature on the affidavit accompanying his summary judgment response. . . . These factors demonstrate their authenticity.").

Hearsay is "any out-of-court statement introduced in evidence for the purpose of proving the truth of the matter contained in the statement."  *United States v. Williamson*, 450 F.2d 585, 589 (5th Cir. 1971).  Because Plaintiff seeks to use Officer Burns's statement against him, it is a party admission and not hearsay.  Fed. R. Evid. 801(d)(2)(A).  Defendants' objections to Officer Burns's statement are **OVERRULED**.

### 2.    *Officer Burns's Unrelated Traffic Stop Reports*

Defendants also object to the alleged reports by Officer Burns concerning two unrelated traffic stops as unauthenticated, hearsay, and not relevant.  (Docs. 51 at 8-10; 52 at 1-2.)  The reports are printed on a form that does not contain any self-identifying information.  (*See* doc. 51 at 8-10.) In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what the proponent claims it to be.  Fed. R. Evid. 901(a); *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) (noting that a party "may authenticate a document with circumstantial evidence").  While authenticating evidence may consist of circumstantial evidence, such as the document's own distinctive characteristics and the circumstances surrounding its discovery, Plaintiff's bare assertion that all evidence is valid and accurate, without more, is not enough to authenticate it.  *See Arce*, 997 F.2d 1128.  Defendants' authentication objection to the traffic stop reports is **SUSTAINED**.

### *3.      Video Recordings*

Defendants object to the video recording of the traffic stop[2] because it is not relevant to the issue of whether the traffic stop was lawful, as it only shows the parties' conduct after Officer Burns initiated the stop.  (Doc. 52 at 2.)  An officer's conduct after initiating a traffic stop is relevant to deciding whether the traffic stop was lawful because courts must determine whether the officer's actions were within the permissible scope of the valid traffic stop.  *See United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).  Defendants' objection to the traffic stop recording is **OVERRULED**.

Defendants also object to the two other video recordings taken by Plaintiff because they are not authenticated, lacking in foundation, hearsay, and irrelevant.  (Docs. 51 at 11; 52 at 2.)  The two recordings appear to have been made during the daytime by two cameras attached to a vehicle, one facing the front and the other facing the rear, during a drive from a Shell gas station to the Mosley Insurance office[3] and back to the gas station.  (Doc. 51 at 11.)  In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what the proponent claims it to be.  Fed. R. Evid. 901(a);  *Arce*, 997 F.2d at 1128.  Here, the gas station and the insurance office in the video recordings are the same buildings depicted in the pictures taken by the defense expert submitted by Defendants in support of their motion for summary judgment.  (*See* docs. 51 at 11; 45-7; 45-8; 45-9.)  The video recordings therefore are sufficiently authenticated by Defendants' own evidence.

Defendants also argue that the recordings are hearsay.  (Doc. 52 at 2.)  Hearsay is "any out-of-court statement introduced in evidence for the purpose of proving the truth of the matter

---

[2]Defendants objected to the CD because they had not received a copy by the time they filed their reply.  (Doc. 52 at 2.) Plaintiff subsequently filed a sur-reply alleging that he had mailed the CD by certified mail again.  (Doc. 54 at 2.)

[3]This is where Officer Burns allegedly made a u-turn on the night of the traffic stop.  (Doc. 45-9.)

contained in the statement." *Williamson*, 450 F.2d at 589.  Under the Federal Rules of Evidence 801(a)(2), "assertive conduct may be hearsay if introduced for the truth of the matter asserted." *United States v. Allie*, 978 F.2d 1401, 1408 n. 8 (5th Cir. 1992).  Plaintiff's drive from the gas station to Mosely insurance back to the gas station is assertive conduct.  Moreover, Plaintiff is attempting to prove how much time Officer Burns would have taken to return to the gas station, and what kind of visibility he would have had during that time through the recordings.  (Doc. 50 at 14-15.)  He is therefore attempting to introduce the video recordings to prove "[t]he truth of the matter contained in the statement" and it is hearsay.  *See Allie*, 978 F.2d at 1408 (noting that the district court may have erred in admitting a silent videotape of an undocumented immigrant witness getting in and out of a bed in the defendant's garage on hearsay grounds because the government introduced the tape to establish that the defendant harbored undocumented immigrants in his house); *cf. Owens v. Rheem Mfg. Co.*, at *7 (E.D. La. July 24, 1996) ("Plaintiffs apparently intend to use the tape 'Gas Hazards' to 'demonstrate to the jury in a laboratory setting the dangers of flammable vapor ignition.'  Used this way, the video is indisputably hearsay and will not be admitted.").  Defendants' hearsay objection to the video recordings of the gas station is **SUSTAINED**.

### 4.    *Chief McAfee's Letter to Plaintiff*

Defendants object to a copy of the letter Chief McAfee sent to Plaintiff in response to Plaintiff's complaint as unauthenticated, hearsay, not a statement against interest, and irrelevant. (Doc. 52 at 2.)  The letter is sufficiently authenticated because it is on a letterhead from the Mabank Police Department, and Chief McAfee's signature on the letter is identical to his signature on his affidavit.  (*See* docs. 45-1; 51 at 12); *F.T.C.*, 710 F.Supp. at 1523 ("Both the financial statement and letter are on defendant's letterhead.  Moreover, the signature on the letter is identical to the defendant's signature on the affidavit accompanying his summary judgment response. . . . These

factors demonstrate their authenticity."); *see also Madison One Holdings, LLC v. Punch Intern., NV*, No. 4:06-cv-3560, 2009 WL 911984, at *10, (S.D. Tex. Mar. 31, 2009) (observing that all of the documents were "dated and contained the company's logo, pre-printed address, and telephone number[,]" the court found them sufficiently authenticated); *Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 998 (W.D. Tex. 1997) (same). Further, the letter is not hearsay because it is a party admission. Fed. R. Evid. 801(d)(2)(A). A party admission does not need to be a statement against interest. *Id.* ("The statement is offered against an opposing party and was made by the party in an individual or representative capacity.") It is also relevant because it is central to Plaintiff's claim against Chief McAfee. (Docs. 7 at 8; 50 at 26.) Defendants' objections to Chief McAfee's letter are **OVERRULED**.

### 5.    *Written Warnings to Officer Burns*

Defendants object to Chief McAfee's written warnings to Officer Burns as unauthenticated, hearsay, and irrelevant. (Docs. 51 at 13-15; 52 at 2.) The warnings are sufficiently authenticated because they are on printed forms showing the Mabank Police Department's logo, and Officer Burns's signature on them are identical to his signature on his affidavit. (*See* doc. 51 at 13-15); *F.T.C.*, 710 F. Supp. at 1523; *see also Madison One Holdings, LLC*, 2009 WL 911984, at *10; *Perez*, 969 F.Supp. at 998. Further, the warnings signed by Officer Burns are not hearsay because they constitute a party admission. Fed. R. Evid. 801(d)(2)(B) ("The statement is offered against an opposing party and is one the party manifested that it adopted or believed to be true."). The warnings are relevant because they relate to Plaintiff's claim against Chief McAfee for failure to adequately train, supervise and discipline Officer Burns. (Doc. 50 at 27.) Defendants' objections to the warnings are **OVERRULED**.

### 6.   *Department Policy on Traffic Stop*

Defendants object to what is purported to be a copy of its policy on traffic stops as unauthenticated, hearsay, and irrelevant. (Docs. 51 at 16; 52 at 2). The policy is a single-page typed document that seemingly was taken from the Mabank Police Department Policy and Procedures Manual (Manual). (Doc. 51 at 16.) Except for a typed footnote, however, it does not contain any self-identifying information. (*See* doc. 51 at 8-10.) There is no evidence that the one-page excerpt presented as a part of the Manual is a true copy of what it purports to be. Fed. R. Evid. 901(a); *Arce*, 997 F.2d at 1128. Plaintiff's bare assertion that all evidence is valid and accurate, without more, is not enough to authenticate it. *See Arce*, 997 F.2d 1128. Defendants' objection to the traffic stop policy is **SUSTAINED** on the authentication ground.

### 7.   *Plaintiff's Affidavit*

Defendants object to Plaintiff's affidavit because it is unsworn, contains hearsay, lacks relevance, and conclusory, and is not competent summary judgment evidence. (Doc. 52 at 2-4.)

#### a.   **Unsworn Declaration**

An affidavit is defined as "a statement in writing of a fact or facts signed by the party making it, *sworn to before an officer authorized to administer oaths*, and officially certified to by such officer under his seal of office. " *Blanco, Inc. v. Porras*, 897 F.2d 788, 792 (5th Cir.1990) (emphasis original); *see also Wavefront Technology Solutions, Inc. v. Morton*, No. H–11–383, 2012 WL 2846868, at *5 (S.D.Tex. May 2, 2012), *adopted by* 2012 WL 2842269 (July 10, 2012). An affidavit opposing a motion for summary judgment must be sworn in order "to raise a fact issue precluding summary judgment." *See Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988). Attorneys and *pro se* litigants alike must strictly comply with the requirement of sworn statements, and courts should require correction of any deficiencies in supporting papers that they

intend to rely on. *See Gordon v. Watson*, 622 F.2d 120, 123 (1980) (per curiam); *accord Brady v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F.Supp. 131, 135 (N.D.Tex.1991). An unsworn declaration may substitute for an affiant's oath, however, if it is made "under penalty of perjury" and is "verified as true and correct." *See Nissho–Iwai American Corp.*, 845 F.2d at 1306 (citing 28 U.S.C. § 1746); *accord Washington v. Moore*, No. 92–1430, 1993 WL 117975, at *1 (5th Cir. Mar.30, 1993).

Although Plaintiff's affidavit is unsworn, it does state: "I swear under the penalty of perjury that the foregoing is true and correct." (Doc. 51 at 24.) Plaintiff's unsworn affidavit therefore meets the criteria for an unsworn declaration and can serve as competent summary judgment evidence. *See* 28 U.S.C. § 1746; *Bazemore v. Castaneda*, No. EP-10-CV-403-DB-DCG, 2011 WL 1675416, at *5 (W.D. Tex. Apr. 12, 2011) (noting that the declaration included the language "I declare under penalty of perjury that the foregoing is true and correct" meets the § 1746 requirement).

### b.   <u>Other Objections</u>

Defendants also object that Plaintiff's unsworn declaration contains hearsay and conclusory statements, and lacks relevance. (Doc. 52 at 3-4.) Plaintiff's unsworn declaration describes the night of the traffic stop and the facts surrounding it, and this constitutes relevant summary judgment evidence. (Doc. 51 at 17-24.) Plaintiff also discusses whether racial profiling occurred in Mabank without supporting evidence, offers speculation about the traffic stop, and makes conclusory statements about police practices. (*Id.*) To the extent that Plaintiff's unworn declaration contains statements that constitute hearsay or conclusory, they are not considered in reviewing Defendants' motion for summary judgment. *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the

inadmissible portions of a challenged affidavit).  Defendants' objections to Plaintiff's unsworn declaration are **OVERRULED**.

### III. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Defendants move for summary judgment, asserting qualified immunity.  (Docs. 44, 46.)

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  A governmental employee asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).  He has no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000). The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).  Although courts view the evidence

in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)).  The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

## IV. QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry.  Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to

each case.  *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir.

2009).  If the court answers both the constitutional violation and clearly established questions in the

affirmative, the officer is not entitled to qualified immunity.  *Lytle*, 560 F.3d at 410.

     Here, even though Defendants have no burden to provide evidence, they have submitted

affidavits from Chief McAfee, Officer Burns, and defense expert Clint McNear.  (*See* doc. 45.)  The

burden is on Plaintiff to produce evidence showing that Defendants violated his constitutional rights,

and that the violation was objectively unreasonable under clearly established law at the time of the

violation.  *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

**A.**     **Fourth Amendment**

     Defendants move for summary judgment on Plaintiff's Fourth Amendment claim on grounds

that the traffic stop was supported by reasonable suspicion.  (Doc. 46 at 14.)

     The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

Generally, a search or seizure without probable cause or warrant is a violation of the Fourth

Amendment.  *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir.2000); *Mangieri v. Clifton*, 29

F.3d 1012, 1016 (5th Cir.1994) ("The right to be free from arrest without probable cause is a clearly

established constitutional right.").  Detaining a vehicle and its occupants constitutes a "seizure"

within the meaning of the Fourth and Fourteenth Amendments, "even though the purpose of the stop

is limited and the resulting detention quite brief."  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

     To analyze the legality of a traffic stop, the Fifth Circuit applies the two-part test set out in

*Terry v. Ohio*, 392 U.S. 1 (1968).  *See Pack*, 612 F.3d at 349-50.  First, courts determine whether

the initial traffic stop was justified.  *Id.* at 350.  Upon finding that the stop was justified, courts then

determine whether the officer's subsequent actions were reasonably related in scope to the

circumstances that caused him to initiate the stop.  *Id.*

### 1.      *Initial Traffic Stop*

The first part of the *Terry* test is met "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 332, 327 (2009).  "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) ("It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers.  [S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.") (citations and internal quotation marks omitted).  To satisfy the Fourth Amendment, the stopping officer must be able to "articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (internal quotation marks omitted).  The Fourth Amendment requires only a "minimal level of objective justification for making the stop." *Id.*  Ultimately, the validity of the traffic stop is determined under "the totality of the circumstances–the whole picture." *Id.*  Factors that ordinarily would "constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers[.]" *United States v. Holloway*, 962 F.2d 451, 459 (5th Cir.1992).

Although Officer Burns has met his burden by simply asserting the qualified immunity defense, he also submitted a sworn affidavit.  It states that he observed Plaintiff traveling below the speed limit, alerting him of a potentially intoxicated driver.  (Docs. 7 at 2; 45-4 at 2; 51 at 18.)  Once Officer Burns began following Plaintiff, he exited the highway, entered a 24-hour gas station that was known to be a target of criminal activities, and then parked in an area away from the lighted

entrance.  (Docs. 45-4 at 2; 51 at 19.)  Plaintiff stayed at the gas station for a very short time–just enough for Officer Burns to drive past the gas station–and then left.  (Docs. 45-4 at 3; 51 at 20.) Officer Burns did not see any headlights crossing the intersection even though he kept it under watch while making a u-turn, so he concluded that Plaintiff had his headlights off when he pulled out of the gas station.  (Doc. 45-4 at 3); *see Gibson v. Rich*, 44 F.3d 274, 277 n.7 (5th Cir. 1995) (stating that the issue under qualified immunity is what the officer reasonably believed, not the actual fact of unlawful activity).

Officer Burns provided evidence demonstrating a "minimal level of objective justification for making the stop[,]" when he stated that he believed Plaintiff may have been intoxicated because he was traveling below the posted speed limit.  *Chavez*, 281 F.3d at 485; *see Banuelos-Romero v. United States*, No. 2:10-CV-0182, 2013 WL 2234418, at *1, 5 (N.D. Tex. May 21, 2013) (finding that the officer "had sufficient reasonable, articulable suspicion the driver might be impaired [due to slow speed and t]hat safety factor and concern would have been sufficient to justify an investigative stop.").  He also stated that he did not observe any vehicle crossing the intersection with its headlights on during the time he kept the intersection under observation in the middle of the night, and he concluded that Plaintiff pulled out of the gas station without his headlights on.  (Doc. 45-4 at 3.)  Viewing the totality of the circumstances, Defendants have identified evidence in the record establishing that Officer Burns had reasonable suspicion to initiate the traffic stop.  *See Banuelos-Romero,*2013 WL 2234418*,* at *1; *Montgomery*, 2012 WL 3544867, at *1; *see also Holloway*, 962 F.2d at 459.  The burden now shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact that the initial traffic stop was not justified.

Plaintiff first argues that Officer Burns's affidavit is a "sham" containing contradictions and additions and must be disregarded.  (Doc. 50 at 4.)  He claims that Officer Burns told him that he

15

had been pulled over because he pulled out of the gas station with his lights off, (doc. 51 at 11, traffic stop at 01'04"; 51 at 21.), but the affidavit states that Officer Burns concluded that Plaintiff had crossed the intersection with the headlights off because he had not seen any car pass through the intersection with lights on, (doc. 45-4 at 3).  This is not a contradiction.  Rather, Officer Burns' affidavit explains why he concluded that Plaintiff had his headlights off when he pulled out of the gas station.[4]  Plaintiff also asserts that Officer Burns manufactured evidence in the affidavit because he lists another reason for the traffic stop, i.e., that Plaintiff crossed a lane marker, that he did not give during the traffic stop.  (Doc. 50 at 6.)  He essentially attacks the credibility of Officer Burns. "[C]redibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, even disregarding the purportedly manufactured evidence, Officer Burns has still provided sufficient evidence to show he had a reasonable suspicion for the traffic stop.

Citing *United States v. Prokupek*, 632 F.3d 460 (8th Cir. 2011), and *United States v. Garcia*, 976 F. Supp. 2d 856 (N.D. Tex. 2013), Plaintiff argues that there was no reasonable suspicion for the traffic stop because Officer Burns could not have seen him drive with the headlights off.  (Doc. 50 at 15-16.)  In *Prokupek*, the issue was not whether the officer actually saw the traffic infraction, but rather, his conflicting statements about whether the defendant had signaled before taking a ramp. *See* 632 F.3d at 462-63.  The issue in *Garcia* was not whether the officer saw the driver's traffic infraction, but whether the driver saw a sign that gave him notice of a particular traffic law in the area.  976 F. Supp. 2d at 863-64.  The government in *Garcia* argued that the driver drove past a sign

---

[4]Plaintiff asserts that Officer Burns first changed his story in his report to Chief McAfee as a response to his complaint. (Doc. 50 at 6 n.2.)  There, Officer Burns stated that when he made a u-turn, Plaintiff's vehicle disappeared suddenly and he found taillights of a vehicle moving away.  (Doc. 51 at 7.)  This observation is also consistent with Officer Burns's conclusion that Plaintiff had turned his headlights off when he pulled out of the gas station.

that served as notice, but because the officer never saw the driver pass the sign, and there were multiple entry points past the sign through which the driver could have entered the highway, the court declined to impute notice to the driver. *Id.* at 864-65.

Plaintiff also attempts to separate each and every violation Officer Burns observed to argue that when considered separately, they do not give rise to reasonable suspicion. (Doc. 50 at 7-22.) The reasonableness of Officer Burns's conduct, however, is considered under the totality of the circumstances. *Chavez*, 281 F.3d at 485. Under the totality of the circumstances, Officer Burns has "articulate[d] more than an inchoate and unparticularized suspicion or hunch of criminal activity[]" to justify a traffic stop. *Id.* (internal quotation marks omitted). Plaintiff's arguments do not constitute sufficient evidence to create a factual issue as to whether the initial stop was justified under the totality of circumstances.

### 2. *Reasonableness of Actions Subsequent to the Traffic Stop*

The second step under the *Terry* analysis is whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to initiate the stop. *Pack*, 612 F.3d at 350. If the officer detains the vehicle's occupant for longer than what is necessary to investigate the circumstances surrounding the stop, the subsequent actions are not "reasonably related in scope" of the traffic stop. *Id.* During a valid traffic stop, an officer can request "a driver's license, insurance papers, vehicle registration, [and] run a computer check[.]" *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). The officer is also permitted to "ask about the purpose and itinerary of a driver's trip during the traffic stop. . . . [because s]uch questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). The Fifth Circuit has "reject[ed] any notion that a police officer's questioning, even on a subject unrelated to the

purpose of the stop, is itself a Fourth Amendment violation. . . . because detention, not questioning, is the evil at which *Terry*'s second prong is aimed." *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011).  Questions unrelated to the stop are therefore permitted as long as they "do not extend the duration of the stop." *Id.* at 518.  Further, the detention from the traffic stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Banuelos-Romero*, 587 F.3d 763, 766-67 (5th Cir. 2010) (internal quotation marks omitted).  There is "no constitutional stopwatch on traffic stops[,]" however. *Brigham*, 382 F.3d at 511.

According to the traffic stop recording, Officer Burns first asked Plaintiff about his address and his itinerary. (Doc. 51 at 11, traffic stop at 1'24", 5'45".) Plaintiff "was uncooperative, verbally belligerent and refused to answer even the most basic questions while demanding to have a lawyer present." (Doc. 45-3 at 4.)  When he found no outstanding warrants or criminal history, Officer Burns let him go without a citation.  (*Id.*)  The traffic stop lasted approximately seven minutes. (*Id.*)

As noted, if an officer's initial traffic stop was justified, the officer can request "a driver's license, insurance papers, vehicle registration, [and] run a computer check[.]" *Shabazz*, 993 F.2d at 437.  The officer is also permitted to "ask about the purpose and itinerary of a driver's trip[.]" *Brighman*, 382 F.3d at 508.  Officer Burns has presented sufficient evidence supporting the reasonableness of his subsequent action because his questions were squarely within the bounds of permitted inquiries. *See United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003); *Shabazz*, 993 F.2d at 437; *see also Hiibel v. Sixth Judicial Dist. Court of NV, Humboldt County*, 542 U.S. 177, 189 (2004) (stating that an officer's request for identification "was a commonsense inquiry, not an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence."). Defendants have brought forward evidence to show that the officer's actions after the initial traffic stop were justified, and the burden now shifts to Plaintiff to identify evidence that raises a genuine

18

issue of material fact.

Plaintiff asserts that Officer Burns unlawfully extended the traffic stop after the computer check cleared him, violating his Fourth Amendment rights.  (Doc. 50 at 24.)  According to the video recording submitted by Plaintiff, Officer Burns detained Plaintiff at most for 90 seconds after the computer check cleared, ending the conversation by alerting Plaintiff that his gas cap was open. (*See* doc. 51 at 11, traffic stop at 6'50".)  Plaintiff fails to show how those 90 seconds constitute an unreasonable detention, especially since any "extended stop" could be attributed to his own refusal to answer Officer Burns's questions.  *See Terry*, 392 U.S. at 34 ("Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, *although it may alert the officer to the need for continued observation*." (White, J., concurring) (emphasis added)); *see also Kolender v. Lawson*, 461 U.S. 352, 366 (1983) ("[U]nder the Fourth Amendment, police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions.").  Any continued observation by Officer Burns for 90 seconds due to Plaintiff's refusal to answer reasonable questions does not constitute an extended detention.  *Id.*  Plaintiff failed to produce evidence that raises a genuine issue of material fact on the unreasonableness of the detention, and Officer Burns is entitled to qualified immunity as to the Fourth Amendment claim.

## B.      Fifth Amendment

Plaintiff alleges that Officer Burns violated his Fifth Amendment rights by using threats to compel answers from him.  (Doc. 50 at 25.)  He asserts that such threats were a violation of his Fifth amendment right to remain silent.  (*Id.*)

"It is a 'settled principle that while police have the right to request citizens to answer

voluntarily questions concerning unsolved crimes they have no right to compel them to answer.'"
*Kolender*, 461 U.S. at 360 n. 9.   The Fifth Amendment, however, "prohibits only compelled testimony that is incriminating."   *See Hiibel*, 542 U.S. at 189.   Thus, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."   *Id.*

        Defendants assert that no facts show any deprivation of Plaintiff's constitutional rights.
(Doc. 46 at 15.)   Defendants have met their summary judgment burden by asserting qualified immunity, and the burden shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact.   According to Plaintiff's traffic stop recording, Officer Burns commented that Plaintiff's refusal to be cooperative may cause them to be "out there all night," but he let Plaintiff go less than a minute later.   (Doc. 51 at 11, traffic stop at 6'00"-6'50".)   Plaintiff fails to present any evidence creating a fact issue regarding whether Officer Burns threatened him.   *Brighman*, 382 F.3d at 508 (stating that an officer is permitted to "ask about the purpose and itinerary of a driver's trip").
Officer Burns is entitled to qualified immunity as to this claim.

**C.      Fourteenth Amendment**

        Plaintiff also asserts that Officer Burns violated his Fourteenth Amendment rights.   (Doc. 7 at 10.)   He alleges that there was racial motivation behind the traffic stop, raising an equal protection issue.   (*Id.*)

        "The [E]qual [P]rotection [C]lause of the [F]ourteenth [A]mendment is essentially a mandate that all persons similarly situated must be treated alike."   *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).   The Supreme Court noted that racially motivated traffic stops run afoul of the Equal Protection Clause of the Fourteenth Amendment.   *Whren*, 517 U.S. at 813.   "The Constitution prohibits selective enforcement of the law based on considerations such as race."   *Id.*   A plaintiff asserting an equal protection claim must show that the defendants are selectively enforcing a state

statute based on impermissible grounds. *Rolf*, 77 F.3d at 828.

As already discussed, Officer Burns has brought forward evidence that he had reasonable suspicion sufficient to conduct a traffic stop. Officer Burns also stated that because of the "lack of ambient lighting and the nighttime conditions," he was unable to observe any features of the driver, including his race, until after he initiated the traffic stop. (Doc. 45-4 at 4.) Officer Burns has met his summary judgment burden. The burden now shifts to Plaintiff to raise a genuine issue of material fact. Plaintiff attempts to support his racial profiling claim by relying on unidentified sources for his allegation that racial profiling occurred frequently in the area he was traveling. (Docs. 7 at 4-5, 9) This is not competent summary judgement evidence. *See Turner*, 476 F.3d at 343 ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). Plaintiff fails to identify evidence to support his claim that race was Officer Burns' motivating factor, or that he knowingly engaged in any illegal conduct. *See United States v. Vandyck-Aleman*, 201 F. App'x 215, 218 (5th Cir. 2006) (citing to *United States v. Lopez-Moreno*, 420 F.3d 420, 434 (5th Cir. 2005)). Because Plaintiff fails to identify evidence in the record that tends to show a constitutional violation under the Fourteenth Amendment, Officer Burns is protected by qualified immunity as to this claim.[5]

## D.     Failure to Supervise

Chief McAfee moves for summary judgment on Plaintiff's claim that he failed to train,

---

[5]Plaintiff first raised a First Amendment claim in his opposition to Defendants' motion for summary judgment. (*See* doc. 50 at 25.) "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). To the extent Plaintiff seeks to assert a First Amendment retaliation claim, it is not considered. Plaintiff also seems to assert a Sixth Amendment claim when he argues that his right to counsel was violated. (*See* doc. 7 at 9.) The Sixth Amendment right to counsel, however, attaches only when Plaintiff is in custodial interrogation. *United States v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998). An ordinary traffic stop, although it significantly curtails the freedom of the driver, is not custodial for *Miranda* purposes. *See Berkemer v. McCarty*, 468 U.S. 420, 437-39 (1984); *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988). Because there was no custodial interrogation for the right to counsel to attach, any asserted Sixth Amendment claim fails as a matter of law.

supervise, and discipline Officer Burns with deliberate indifference, which resulted in the racially motivated traffic stop. (Doc. 7 at 8.)

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

To establish liability under § 1983 on a failure to train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005). A negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Brd of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice."). A showing of deliberate indifference usually requires "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights[.]" *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

22

also draw the inference." *Estate of Davis ex rel, McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Courts have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F.Supp.2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A single incident of an alleged constitutional violation may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86. To prove the existence of deliberate indifference, Plaintiff must present evidence that Chief McAfee had notice of a pattern of *similar violations* in the past but failed to train or supervise, or that the highly predictable consequence of his failure to train or supervise was the injury to Plaintiff. *See id.* at 381-86; *Thompson*, 245 F.3d 458-59.

Chief McAfee presents evidence that he had personally confirmed that Officer Burns's training record met the requirements by the State of Texas. (Doc. 45-1 at 2.) He also submits a copy of the Mabank Police Department directive that prohibits racial profiling, which was in effect at the time of the traffic stop. (Doc. 45-3.) Chief McAfee states that he was not aware of any allegations of racial profiling involving Officer Burns, or any complaints that would have justified disciplining Officer Burns. (Doc. 45-1 at 2.) He has identified evidence showing that there was no failure to train Officer Burns, and that he did not act in deliberate indifference. The burden shifts to Plaintiff

to present evidence that there is a disputed material fact on Chief McAfee's failure to train Officer Burns or the existence of Chief McAfee's deliberate indifference.

Aside from conclusory allegations, Plaintiff presents no evidence of a pattern of violations. (*See* doc. 7 at 8.)  He submits evidence of the Chief's disciplinary notes on Officer Burns, but the notes do not relate even remotely to racial profiling or traffic stops.  (*See* doc. 51 at 13-15 (failure to keep up with vehicle maintenance and to obtain approval before obtaining off-duty employment).) Plaintiff also asserts that Chief McAfee's actions in clearing Officer Burns of wrongdoing showed deliberate indifference to Plaintiff's constitutional rights because the reason Chief McAfee gave for clearing Officer Burns conflicted with the facts.  (Docs. 7 at 8; 50 at 26.)  This falls far short of showing that Chief McAfee was deliberately indifferent to racial profiling, nor does it show his failure to train or supervise resulting in a highly probable consequence of racial profiling.  *See Estate of Davis*, 406 F.3d at 385-86 (noting that a single incident of an alleged constitutional violation may serve as a basis for liability if Plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation.").  Plaintiff fails to present evidence that Chief McAfee was deliberately indifferent to racial profiling or unlawful traffic stops.  He also fails to carry the burden to show that Chief McAfee was deliberately indifferent in his training, supervision or discipline of Officer Burns.  Summary judgment should be granted in favor of Chief McAfee.

## V. STATE LAW CLAIMS

Plaintiff also asserts the state-law tort claims of false imprisonment and intentional infliction of emotional distress.  (Doc. 7 at 10-11.)

### 1.      *Supplemental Jurisdiction*

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3); *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), aff'd 286 F. App'x 135 (5th Cir. 2008).  Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of state law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Nonetheless, this rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted).  Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v.*

25

*Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. First, Plaintiff's state claims arise from the same "common nucleus of operative facts" as his federal claims, namely, the traffic stop. Requiring Plaintiff to litigate these claims in state court would "necessarily require consideration by two distinct courts of the same operative facts" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. In addition, because the action has been pending for over two years, the Court has spent a substantial amount of time and resources reviewing the pleadings and researching the legal issues involved, and has become familiar with the merits of the claims. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), aff'd, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources that it has spent adjudicating the case). Court should therefore exercise supplemental jurisdiction over Plaintiffs' state law claims and review them on the merits.

### 2.       *Texas Civil Practice & Remedies Code § 101.106*

Defendants move for dismissal of Plaintiff's state law claims under Texas Civil Practice & Remedies Code § 101.106. (Doc. 46 at 10-11.)

"Section 101.106 is part of the Texas Tort Claims Act, which waives sovereign immunity in certain limited circumstances." *Cravens v. Ontiveros*, No. Civ. A. G-05-222, 2006 WL 470584, at *5 (S.D. Tex. Feb. 27, 2006) (citing to Tex. Civ. Prac. & Rem Code § 101.001 *et seq.*). Under

§ 101.106, any state-law tort claim against a government employee must be dismissed if the claim is based on the employee's actions within the scope of his or her employment. *See* Tex. Civ. Prac. & Rem. Code § 101.106; *Franka v. Velasquez*, 332 S.W.3d 367, 376–79 (Tex.2011).

> Section 101.106(f) states:
>
> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id.* It is "meant to prevent plaintiffs from achieving double recovery from both governmental actors and governmental entities." *Cravens*, 2006 WL 470584, at *5. In *Franka*, however, the Texas Supreme Court clarified that § 101.106(f) applies to all torts, not just those torts for which the state waived its sovereign immunity. *See Franka*, 332 S.W.3d at 381 ("[S]ection 101.106(f) . . . foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment.").

Once a government employee moves for dismissal, state law tort claims may be dismissed "(1) via the plaintiff's amended pleading substituting the governmental unit for the employee as the defendant; or (2) absent such an amended pleading, via the trial court's order granting the employee's motion and dismissing the suit against the employee." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013). "[S]ubsection (f) does not *require* any affirmative action by the plaintiff." *Id.* (emphasis in the original).

Here, there is no dispute that Defendants were acting within the scope of their employment with a governmental unit. *See Bataille*, 2012 WL 3544867, at *9 (dismissing a defendant who, at the time of the incident (i.e. a traffic stop), was an on-duty police officer for a Texas state

27

university).  Plaintiff's state-law tort claims against Defendants, therefore, should be dismissed pursuant to § 101.106(f).  *See Villasana v. City of San Antonio*, No. SA-13-CV-278-XR, 2014 WL 640965, at *13 (W.D. Tex. Feb. 18, 2014).

## VI.  CONCLUSION

Defendants' motion for summary judgment should be **GRANTED,** and all of Plaintiff's claims against them should be **DISMISSED with prejudice**.

**SO RECOMMENDED on this 2nd day of September, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE